UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:24-cv-25046-RAR

XYZ CORPORATION,

    Plaintiff,
v.

THE INDIVIDUALS, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.
_____/

**Defendants' Response In Opposition To
Plaintiff's Motion for Preliminary Injunction**

Defendants, Honey Life Store (No. 19), Eastern Tree (No. 31), TELAIGE (No. 11), Shifen Home Shop (No. 96), and Jia X's Market (No. 28) (collectively, "Defendants"), by and through undersigned counsel, hereby respond in opposition to Plaintiff's Motion for Preliminary Injunction [D.E. 8] and, in support thereof, states as follows:

**I.    Procedural Background**

On December 23, 2024, Plaintiff, XYZ Corporation ("Plaintiff"), filed a Complaint alleging patent infringement against, *inter alia*, Defendants, relating to Plaintiff's design patent found at U.S. Patent No. D1,021,425 S ("Plaintiff's Patent"). [D.E. 1]. An Amended Complaint was filed under seal on February 6, 2025. [D.E. 7]. Notably, as the Amended Complaint contains bulk allegations against the defendants referenced therein, the Complaint does not contain any specific statement(s) or allegations of fact against Defendants.

On February 6, 2025, Plaintiff filed its Sealed *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets. [D.E. 8]. On February 18, 2025, the Court entered an Order granting Plaintiff's *Ex Parte* Motion for Entry of

Temporary Restraining Order **without notice or adversarial presentation** (the "Order").

The Order states that the "Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties." [D.E. 10, ¶ 9]. The Order set a telephonic hearing on Plaintiff's Motion for Preliminary Injunction for February 25, 2025 [D.E. 10, ¶ 12]. On February 25, 2025, a paperless minute entry for proceedings held on Plaintiff's Motion for Preliminary Injunction was held; however, the docket is unclear whether any further order was entered extending the TRO or otherwise granting Plaintiff's Motion for Preliminary Injunction. *See* [D.E. 13]. Furthermore, Plaintiff has not filed any motion seeking to extend the TRO.

Notwithstanding, for the reasons explained in further detail below, Plaintiff is not entitled to any further relief pursuant to its Motion for Preliminary Injunction, as Plaintiff is unlikely to succeed on the merits of its claims. As a result, any request for preliminary injunction and/or asset restraint sought by Plaintiff must be denied.

**II.      Argument**

    **a. Legal Standard**

An injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly established the burden of persuasion as to the prerequisites. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir.2000). To obtain injunctive relief, a movant must satisfy four requirements: (1) "a substantial likelihood of success on the merits," (2) "that the preliminary injunction is necessary to prevent irreparable injury," (3) "that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant," and (4) "that the preliminary injunction would not be averse to the public interest." Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014).

Generally, the first element is the most important because granting a temporary restraining order or motion for preliminary injunction would be inequitable if the movant has no chance of success on the merits. Martinetti v. Tucker, 2012 WL 13071123 at *1 (S.D. Fla. May 8, 2012); *see also* Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed.Cir.2001) (stating a moving party is not entitled to a preliminary injunction unless it establishes both the likelihood of success on the merits and irreparable harm absent a preliminary injunction).

      **b. Plaintiff's Motion for Preliminary Injunction should not be granted because Plaintiff is unlikely to succeed on the merits.**

In the patent context, a "reasonable likelihood of success" requires a showing of (1) validity, and (2) infringement. *See* Ranbaxy Pharm., Inc. v. Apotex, Inc., 350 F.3d 1235, 1239 (Fed.Cir.2003) (stating to establish likelihood of success on the merits, the moving party must show that – in light of the presumptions and burden that will inhere at trial on the merits – (i) it will likely prove infringement, and (ii) its infringement claim will likely withstand challenges to the validity and enforceability of its patent); *see also* Mylan Institutional LLC v. Aurobindo Pharma Ltd., 857 F.3d 858 (Fed. Cir. 2017) (stating to establish a substantial likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims *and* that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability) (emphasis added).

      **i. A substantial question exists as to the validity of Plaintiff's Patent due to application of the on-sale bar doctrine.**

Though an issued patent is presumed valid, this presumption "does not relieve a patentee who moves for preliminary injunction from carrying the normal burden of demonstrating [likelihood of success,] even when the issue concerns the patent's validity." Helifix, Ltd. v. Blok–Lok, Ltd., 208 F.3d 1339, 1351 (Fed.Cir.2000). If the alleged infringer raises a "substantial

question" concerning validity, enforceability, or infringement, the Court is precluded from issuing a preliminary injunction. Id. In order to raise a "substantial question" on validity for injunctive purposes, the alleged infringer is not required to demonstrate to a legal certainty that it would ultimately win at trial. In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. 2d 1279, 1304 (S.D. Fla. 2005). "Validity questions during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial….Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." Amazon.com, Inc., 239 F.3d at 1358–59; *see also* Fusilamp, LLC v. Littelfuse, Inc., 2010 WL 3446913, at *3 (S.D. Fla. August 31, 2010) (stating an alleged infringer must only establish the existence of a substantial question as to the invalidity of the patent to meet its burden in defending against a motion for preliminary injunctive relief, and this burden is merely to show "vulnerability" of the patent at the preliminary injunction stage – not to establish the patent's "invalidity."); *see also* TAS Energy, Inc. v. Stellar Energy Americas, Inc., 2015 WL 6156149 (M.D. Fla. Oct. 19, 2015) (stating to meet its burden of raising a substantial question concerning validity, the alleged infringer must only show that the patent is "vulnerable," which requires less proof than the clear and convincing showing necessary to establish invalidity itself.).

Once the alleged infringer establishes the existence of a substantial question as to the validity of the patent, the burden shifts to the patentee to show that it will likely succeed at trial. Id. In doing so, the patentee must show that the alleged infringer's defense lacks substantial merit. New England Braiding Co., Inc. v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed.Cir.1992). *See also* Genentech, Inc. v. Novo Nordisk A/S, 108 F.3d 1361, 1364 (Fed.Cir.1997) ("In other words, if [the alleged infringer] raises a 'substantial question' concerning validity, enforceability, or

infringement (i.e., asserts a defense that [the patentee] cannot show 'lacks substantial merit') the preliminary injunction should not issue.").

Under 35 U.S.C. § 102(b), a patent is invalid if the invention it claims was offered for sale or sold in the United States more than one year prior to the filing date of the patent application. See In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. at 1304; see also Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1366 (Fed. Cir. 2000) (affirming invalidity of a patent because the accused product was placed for sale prior to the critical date of the patent). The "on-sale bar" does not require sustained commercial activity, advertising, or displays; rather, a single sale or a single offer to sell is sufficient to trigger the statutory bar. See In re Caveney, 761 F.2d 671, 676 (Fed.Cir.1985). Furthermore, the sale or offer of sale does not need to be made by the inventor or by the patent owner. Id. A sale or offer for sale by a third party is just as effective a statutory bar to validity as a sale or offer by the inventor. Id.; see also J.A. LaPorte, Inc. v. Norfolk Dredging Co., 787 F.2d 1577 (Fed.Cir.1986) (stating the "bar is not limited to sales by the inventor or one under his control, but may result from the activities of a third party."); see also Mfg. Rsch. Corp. v. Graybar Elec. Co., 679 F.2d 1355, 1361-3 (11th Cir. 1982) (finding no infringement based upon application of statutory on-sale bare, because a third party had offered for sale a functional too that embodied the tool claimed in the patent fourteen months before the patent application was filed).

Here, Plaintiff's Patent was filed for on April 25, 2023. See [D.E. 7]. Therefore, the critical date for purpose of the "on-sale bar" is April 25, 2022. Defendants preliminary search shows that identical products were sold on Amazon as early as February 2018. See Declaration of Weiping Qui, ¶ 5. Such sales raise a substantial question as to the validity of Plaintiff's Patent. See e.g. In re Terazosin Hydrochloride Antitrust Litig., 352 F. Supp. at 1304 (stating the existence of at least

three sales prior to the patentee's critical date resulted in the application of the "on-sale bar."); *see also* In re Caveney, 761 F.2d at 676 (stating evidence of a single sale is sufficient to trigger the "on sale" bar.).

Absent Plaintiff's presentation of some argument stating that Defendants' application of the "on-sale bar" lacks merit – which Plaintiff is unable to do based upon the clear and convincing evidence presented in support of this opposition – it is apparent that Plaintiff is unable to meet the exacting requirements needed to obtain the "extraordinary relief" of a preliminary injunction. Furthermore, as Plaintiff's Patent is likely to be declared invalid, it follows that Plaintiff is not likely to succeed on the merits of its claims raised in Plaintiff's Amended Complaint. *See e.g.,* Pride Family Brands, Inc. v. Carl's Patio, Inc., 992 F. Supp. 2d 1214, 1223 (S.D. Fla. 2014) (granting summary judgment and declaring a patent invalid based on application of the on-sale bar).

> ii. **A substantial question exists as to the validity of Plaintiff's Patent due to obviousness.**

An additional basis for questioning the validity of Plaintiff's Patent is the obvious nature of its design. Section 103(a) precludes a patent's issuance when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law based on the underlying factual inquiries including: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims, (3) the level of ordinary skill in the relevant art, and (4) any objective indicia of non–obviousness, such as commercial success, long felt need, and failure of others. Id.

Defendants' respective products at issue relate to its "Movable Gridwall Panel" (the

"Accused Products"). The first order for Defendants' Accused Product was made on December 20, 2022, which predates the filing date of Plaintiff's Patent. *See* Declaration of Weiping Qui, ¶ 5. Defendants' Accused Products constitute prior art in relation to Plaintiff's Patent, in that it existed prior to the filing of Plaintiff's Patent. Other prior art relating to and/or otherwise encompassing Plaintiff Patent existed as early as 2016. Id.

The obvious nature of Plaintiff's Patent is clear; Defendants' Accused Products and other existing prior arts are provided for the purpose of providing a portable wall panel used for affixing merchandise and/or other items for display. It is obvious that a portable wall panel may be transported in various ways and/or presented with different panel patterns or formations (i.e. two panels vs. four panels). It is obvious that Plaintiff's Patent would seek different shapes or methods of portability; as such, there is no difference in Plaintiff's Patent that would render it sufficiently unique from Defendants' Accused Products or other cited prior art for the purpose of obtaining patent protection

### iii. An ordinary observer would not confuse Plaintiff's Patent with Defendant's Accused Products.

Additionally, Plaintiff is unlikely to succeed on the merits of its case due to lack of infringement of Plaintiff's by Defendant. Design patent infringement is a question of fact, which a patentee must prove by preponderance of the evidence. *See* L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1123 (Fed.Cir.1993). In Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 678 (Fed.Cir.2008), the Federal Circuit held that "the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." In furtherance thereof, the "patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1295 (Fed. Cir. 2010). This analysis requires the Court to

conduct a comparison of noted ornamental features as it relates the overall effect on the designs. Id.; *see also* Egyptian Goddess, 543 F.3d at 681 ("An ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design.").

Plaintiff's Patent Claim is for "The ornamental design for a wall panel, as shown and described". *See* [D.E. 7]. Plaintiff's Patent can be further characterized as follows: a two column, four paneled grid that is fully enclosed as a rectangle set atop a frame composed of two large triangular components that connect the grid to two rectangular cross braces, which frame is itself set atop four casters. Per the charts submitted by Defendants comparing Plaintiff's Patent to Defendant's Accused Products – *See* Declaration of Weiping Qui, ¶ 6 (citing to Exhibit E attached thereto) – it is abundantly evident that an ordinary observer would declare that Defendant's Accused Products are substantially dissimilar from Plaintiff's Patent, in that Defendant's Accused Products consist of totally different products and/or otherwise contain entirely different and unique features and characteristics not found in Plaintiff's Patent.

Furthermore, Plaintiff's Motion for Preliminary Injunction fails to satisfy the burden needed to obtain injunctive relief based on Plaintiff's claim for patent infringement against Defendants, as Plaintiff's cited pictures of accused products neither (i) identifies the defendant associated with such products, nor (ii) claims that Defendant is otherwise affiliated or the seller, provider, or manufacturer of such products (which is not the case); the aforementioned failure provides further basis as to why Plaintiff's Motion for Preliminary Injunction must be denied.

### c. Plaintiff's Amended Complaint is subject to dismissal due to misjoinder.[1]

Plaintiff's Amended Complaint alleges patent infringement against 123 defendants, none of which are affiliated with Defendants. *See* Declaration of Weiping Qui, ¶ 2 (stating Defendants are not associated or co-operated with any other defendants in this action). 35 U.S.C. § 299(a) states "parties that are accused infringers may be joined in one action as defendants" only if the following requirements are met:

> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or **arising out of the same transaction, occurrence, or series of transactions or occurrences** relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and
>
> (2) **questions of fact common to all defendants** or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a) (emphasis added); *see also* In re Nintendo Co., Ltd., 544 F. App'x 934, 939 (Fed. Cir. 2013) (noting, in comparison to Rule 20 – which sets forth requirements for permissive joinder of defendants – 35 U.S.C. § 299(a) "adds a requirement that the transaction or occurrence must **relate to making, using, or selling of the same accused product or process**.") (emphasis added). The statute explicitly warns that allegations "**based solely on allegations that they each have infringed the patent** or patents in suit" are insufficient for joinder. 35 U.S.C. § 299(b). In KPR U.S., LLC v. LifeSync Corporation, 2023 WL 4156693, *2 (S.D. Fla. June 24, 2023), the Southern District of Florida stated (internal citations omitted):

> Even when the technical requirements of § 299(a) are met, "joinder may still be refused 'in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness."

---

[1] To the extent not otherwise set forth herein, Defendants adopt the arguments provided in Section II of NON-PARTY EBAY INC.'S OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW [D.E. 40]. Defendants additionally adopt the arguments provided in Section C (irreparable harm) and Section D (public interest) to the extent such arguments additionally apply to Defendants.

Analyzing the joinder of several parties in a patent case under the analogous joinder framework of Fed. R. Civ. P. 20, the Federal Circuit has concluded that parties cannot be joined "where different products or processes are involved."[2]  In re EMC Corp., 677 F.3d 1351, 1359 (Fed. Cir. 2012).  The Federal Circuit explained:

> Joinder of independent defendants is only appropriate where the accused products or processes are the same in respects relevant to the patent. But the **sameness of the accused products or processes is not sufficient**. Claims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts. **To be part of the "same transaction" requires shared, overlapping facts that give rise to each cause of action, and not just distinct, albeit coincidentally identical, facts. The sameness of the accused products is not enough to establish that claims of infringement arise from the "same transaction." Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical.**

Id. (emphasis added).)  The court went on to conclude that "[i]n a complicated patent litigation a large number of defendants might prove unwieldy, and a district court would be justified in exercising its **discretion to deny joinder**' when different witnesses and documentary proof would be required.'"  (Id. at 1360 (emphasis added) (citation omitted).)

Applying the same principles laid out by the Federal Circuit above, a District Court for the Northern District of Illinois also denied joinder where:

> The **Complaint simply alleges that each of the individual Defendants infringed on the patent** in their home state where they reside. There are **no allegations that the Defendants' actions were performed in concert or connected in any way. Joinder is not suitable where a party completely fails to satisfy the "requirement of a common transaction or occurrence where unrelated defendants, based on different acts, are alleged to have infringed the same patent."** *Rudd v. Lux Prod. Corp. Emerson Climate Techs. Braeburn Sys., LLC*, 2011 WL 148052, at *3 (N.D. Ill. Jan. 12, 2011). Without any "logical

---

[2] While 35 U.S.C. § 299 did not have retroactive effect on this case, the Court nonetheless construed the analogous federal rule on joinder of parties.

> relationship" between the facts associated with the more than 300 Defendants, joinder is wholly inappropriate. *See In re Apple Inc.*, 650 App'x at 775. As a result, each of the remaining Defendants are dismissed for improper joinder under § 299.

Khan v. Hemosphere Inc., 2019 WL 2137378, at *3 (N.D. Ill. May 16, 2019) (emphasis added), *aff'd*, 825 F. App'x 762 (Fed. Cir. 2020).

Such is exactly the case here. Plaintiff's Amended Complaint simply alleges that each of the defendants infringed on Plaintiff's Patent in the same way; however, this type of allegation is insufficient to support joinder. *See* In re EMC Corp., 677 F.3d at 1359 (Federal Circuit concluding that "**sameness of the accused products or processes is not sufficient**" for joinder) (emphasis added); *see also* PPS Data, LLC v. Allscripts Healthcare Solutions, Inc., 2011 WL 13295706, at *6 (M.D Fla. July 21, 2011) (stating that overly broad characteristics are not a sufficient basis for the Court to find that all of the alleged infringing activity is part of the same transaction or occurrence). Moreover, Plaintiff's Schedule A identifying all the defendants in the case [*see* D.E. 7] includes separate store URLs for each defendant, which indicates that the products are *not* the same. This proves there is no commonality between the defendants, and the alleged infringement as to each product is based on a discrete and independent set of facts. Thus, the mere allegation that all the accused products look the same is not enough to join independent parties.

Plaintiff's attempt to join defendants is further defective when considering that patent infringement requires a two-step inquiry: (1) first, the Court must construe each asserted claim, then (2) second, the Court uses its claim construction to analyze each accused product. *See* Tessera, Inc. v. ITC, 2011 WL 1944067, at *4 (Fed. Cir. May 23, 2011). This second step is a question of fact, which necessarily requires factual proof specific to each individual defendant and to each accused product. *See* PPS Data, 2011 WL 13295706, at *7 (citation omitted). As such, the Court must conduct claim construction and because Defendants' respective defenses and counter-

arguments are separate and distinct as it relates to Plaintiff and each other defendant(s), such further supports a finding that each product at issue constitutes a separate transaction or occurrence. *Id.*

Lastly, Plaintiff alleges in conclusory fashion that "Plaintiff's Well-Pleaded Allegations Establish that the Seller Aliases Are all operating in the Same Transaction, Occurrence or Series of Transactions or Occurrences" because (1) defendants use nondescript Seller Aliases (2) no credible information regarding defendants' physical addresses is provided (as alleged by Plaintiff), and (3) defendants show evidence of market coordination, i.e., using the same advertising and marketing strategies to target consumers while attempting to evade enforcement [*see* DE. 7, ¶ 55.). Such claim that Defendants engage in market coordination with other named defendants is categorically false and Plaintiffs provide no facts to support this allegation. As the Khan court pointed out, this type of conclusory allegation cannot support joinder because "[t]here are **no allegations that the Defendants' actions were performed in concert or connected in any way.**" Khan, 2019 WL 2137378, at *3; see also PPS Data*, 2011 WL 13295706, at *6 ("[T]here is no allegation that the majority of Defendants in this case are connected in any way, or that their software products use the same (or similar) resources or function in the same manner."); *see also* Ilustrata Servicos Design, Ltda. v. Partnerships & Unincorporated Associations Identified on Schedule "A", 2021 WL 5396690, at *1 (N.D. Ill. Nov. 18, 2021) (finding allegations insufficient to permit joinder in trademark infringement action despite allegations of common features among seller defendants including "user name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and

images").

### d. Plaintiff is not entitled to an asset restraint. Alternatively, at a minimum, the asset restraint should be limited to the amount that may possibly be recovered as profits through an equitable accounting.

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction – including, without limitation, all relief requested therein – must be denied. However, should the Court determine otherwise, at the very minimum, this Court should limit the asset restraint to the amount that may possibly be recovered as profits through an equitable accounting. The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages. Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). Furthermore, "the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." Charter Sch. Cap., Inc. v. N.E.W. Generation Preparatory High Sch. of Performing Arts, Inc., 2015 WL 11201180 at *3 n. 3 (S.D. Fla. June 2, 2015) (internal citations omitted). Prejudgment asset restraints, therefore "should not include…financial accounts which bear no nexus to the alleged improper activities." F.T.C. v. Washington Data Res., 2011 WL 3566612 at *4 (M.D. Fla. July 15, 2011), *report and recommendation adopted*, 2011 WL 3566208 (M.D. Fla. Aug. 12, 2011); U.S. Commodity Futures Trading Comm'n v. E-Metal Merchants, Inc., 2006 WL 8432005 (S.D. Fla. Jan. 9, 2006) ("any funds not reasonably related to the ultimate relief requested by Plaintiff should be released."); *see also*, Animale Grp. Inc. v. Sunny's Perfume Inc., 256 F. App'x 707, 708 (5th Cir. 2007), *quoting*, Deckert v. Independence Shares Corp., 311 U.S. 282, 289-91 (1940) (noting that prejudgment asset restraints are limited to cases seeking equitable

relief, where they are narrowly drawn "to sequester only those funds necessary to satisfy the potential judgment.").

Applying these principles, any prejudgment asset restraint should be limited to amounts that the plaintiff is reasonably likely to recover pursuant to an equitable accounting of profits in this case. *See* Absolute Activist Value Master Fund Ltd. v. Devine, 2016 WL 1572388 at *5 (M.D. Fla. Apr. 19, 2016) ("The asset freeze, however, may not preserve any amount of assets in excess of the equitable relief sought."); Chanel, Inc. v. 83bab.com, 2014 WL 11881008 (S.D. Fla. June 19, 2014), *report and recommendation adopted*, 2014 WL 11881007 (S.D. Fla. July 11, 2014) (refusing to extend asset freeze to Defendants accounts where there was an insufficient showing that the "accounts also contain illegal profits from the sale of the [counterfeit] goods."); *see also*, Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief. For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more... In other words, the asset-restraint order must be limited only to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale."); F.T.C. v. Bishop, 425 F. App'x 796, 798 (11th Cir. 2011) ("The district court abused its discretion by imposing too broad of an asset freeze without making any reasonable approximation of Defendant-Appellant's ill-gotten gains.").

Furthermore, case precedent mandates that no such restraint should be required. In

exercising its discretion to modify[3] an asset restraint due to being overbroad, the court in *Awareness Ave. Jewelry LLC* stated the following:

> **[It does not appear to] the Court that an asset freeze is required to ensure the availability of permanent equitable relief against the moving Defendants. The amount of funds in their accounts, the minimal profits they have obtained from the alleged infringement, and the fact that they have appeared by counsel in this lawsuit to respond to the complaint, all suggest that they will have funds to pay a judgment for disgorgement of profits if one is ultimately entered.**

Here, Defendants have appeared for the purpose of defending against Plaintiff's claims (as shown by the arguments presented above). Furthermore, Defendants have provided written confirmation to the Court that the Defendants will have funds to pay a disgorgement of profits if one is ultimately entered. *See* Declaration of Weiping Qui, ¶ 8. Accordingly, there is no need for the Court to impose any asset restraint against Defendants.

Alternatively, should the Court deem restraint required, the amount of any asset restraint on the Defendants' accounts should be reduced to, at most, the profit from the Defendants' sales of the Accused Products. Collectively, Defendants have sold 8,613 orders of the Accused Product for a total profit of $131,693.37. *See* Declaration of Weiping Qui, ¶ 6. The amount restrained ($477,234,54) far exceeds the total profit earned from Defendants' alleged infringing activities. Accordingly, the amount of any asset restraint (should restraint be required) should be reduced to, at most, $131,693.37. *See, e.g.*, Roadget Bus. Pte. Ltd. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto, 2024 WL 2763735, at *1 (N.D. Ill. May 30, 2024) ("[I]f the amount of the profits is known, then the asset freeze should apply only to that specific amount, and no more.'").

---

[3] In *Awareness Ave. Jewelry LLC*, the Court exercised its discretion to modify the preliminary injunctive relief previously granted to the extent of eliminating the asset restraint. *See* 2023 WL 3568387, at *2.

**III.     Conclusion**

For the reasons set forth above, Defendants request that the Court deny Plaintiff's Motion for Preliminary Injunction, and grant such further relief as the Court deems just and appropriate.

March 19, 2025                                              Respectfully submitted.

**HEITNER LEGAL, P.L.L.C**
*Attorney for Defendants*
By: /s/ Alan Wilmot
Alan Wilmot (Fla. Bar No. 117840)
215 Hendricks Isle
Ft. Lauderdale, Florida 33301
Telephone: (954) 558-6999
E-mail:  alan@heitnerlegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2025, a true and correct copy of the foregoing was electronically filed using CM/ECF, which serves electronic notice on all counsel of record and registered CM/ECF users.

By: /s/ Alan Wilmot