**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:24-cv-25046-BAR

XYZ CORPORATION,

 *Plaintiff,*

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE "A",

 *Defendants.*

_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION**

 Defendants Rainbow Bridge No.1 and qiezi ("Defendants"), through their counsel, hereby submit its Response in Opposition to Plaintiff's Preliminary Injunction as follows:

**INTRODUCTION**

 On December 23, 2024, Plaintiff filed the above lawsuit against Defendants alleging infringement of its U.S. Patent No. D1,021,425 S (hereinafter referred to as "Plaintiff's Patent 425"). [Dkt. 1]. On February 6, 2025，Plaintiff made a Motion for Preliminary Injunction. [Dkt.8]. On February 18, 2025, this Court entered an order granting Plaintiff's Ex Parte Motion for Entry of Temporary Restraining Order and set a Hearing for Preliminary Injunction February 25, 2025, at 02:00 PM. [Dkt.10].    On February 25, 2025, a paperless minute entry for proceedings held on Plaintiff's Motion for Preliminary Injunction; however, the docket is unclear whether any further order was entered extending the TRO or otherwise granting Plaintiff's Motion for Preliminary

Injunction. [Dkt. 13]. Hereby, Defendants file their Opposition to Plaintiff's Motion for Preliminary Injunction and respond pursuant to the court's order thereof.

## ARGUMENTS

Where a party prays for a preliminary injunction, 3 elements have to be met: "(1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." See *Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895* (7th Cir. 2001). When determining or dissolving a preliminary injunction, the same elements should be considered.

**A.    PLAINTIFF WILL NOT SUCCEED ON THE MERITS**

In this case, even if Plaintiff has provided evidence proving that Defendants have conducted selling or offered to sell "Accused Products" to the residents in Florida of the United States, Plaintiff has never shown enough evidence proving the "Accused Products" sold by Defendants are infringing on the Plaintiff's Patent. While Plaintiff has made his claim with evidence showing the defendants' selling the same kind of products as that of plaintiff, the problem is that as the essence of the design patent focuses on the claim of figures, only selling the similar kind of products without stating each part of defendants' using the claimed figures of plaintiff's patent is not enough to prove the infringement of defendants and the likelihood of success of plaintiff.

Through a detailed comparison (for full comparisons, please see Exhibit 1）of the "Accused Products" and the claims in the Plaintiff's Patents, there are some major differences between Defendants' products and Plaintiff's patent, please see below:

**i.    Comparison and non-infringement analysis of the "Accused Products" and plaintiff's U.S. Patent No. D1,021,425 S ("Plaintiff's Patent 425")**

2

| Patent Figure 1 | Accused Products<br>（Model Wide） | Distinguishing features |
|---|---|---|
|  |  | The wall panels of Plaintiff's Patent 425 and Accused Products are all support frames and grid panels. However, there are many differences in structure between the two, which are compared in detail below. |
| Patent Figure 4 |  |  |

|  | | There are significant differences between the support frames of Plaintiff's Patent 425 and the Accused Products. The support frame in the patent involved in the case includes a pair of cross bars and triangular support plates fixed above the cross bars. Two wheels are fixed under each cross bar, and the center line of the triangular support plates is fixed to the two side edges of the grid plate.<br>The support frame of the product involved in the case also has a pair of horizontal bars and longitudinal support bars located above the horizontal bars. There is also a pair of diagonal support bars above each horizontal bar of this product. One end of the diagonal support rods is fixed on the horizontal bar, and the other end is fixed on the longitudinal support rod, and they are symmetrically arranged along the longitudinal support rod. The oblique support rod can further stabilize the structure of the support frame and prevent the grid plate from tilting.<br>Although the support frame of the Accused Products also has a triangular structure when viewed from the side, the support frame of the Accused Products is hollow, while the support frame of Plaintiff's Patent 425 is a solid sheet structure. The structures of the two are completely different. |
|---|---|---|
| Patent Figure 3 | | |



| | | The triangular support sheet of the support frame of the patent involved in the case is relatively thin, and from the perspective of the main view, the bottom support frame has no obvious protrusion. Therefore, when multiple wall panels are placed in parallel, the gap between the wall panels is small.<br>The longitudinal support rods and diagonal support rods of the support frame of the product involved in the case are relatively thick, and from the perspective of the main view, the support frame at the bottom is obviously protruding. When multiple wall panels are placed in parallel, the gaps between the wall panels are relatively large.<br>Moreover, in conjunction with Figure 1, there is no obvious connection structure between the triangular support sheet and the mesh plate of Plaintiff's Patent 425 , and it may be fixed by welding. The longitudinal support rod of the Accused Products is fastened to the side of the mesh plate by screws and nuts, so it is easy to disassemble and facilitate the transportation of the product. |
|---|---|---|
| Patent Figure 6 | | |
| Patent Figure 2 | | |



| | | The grid panel of Plaintiff's Patent 425 is an integral structure, which includes a square frame, a grid located inside, and longitudinally extending reinforcing beams. The grid plate of the product involved in the case has a split structure, which includes two split grid plates, the two split grid plates are fixed by screws and nuts and can therefore be disassembled for easy transportation. Moreover, the longitudinal reinforcing beam in Plaintiff's Patent 425 serves to strengthen the support and is part of the overall outer frame. In the Accused Products, the upper and lower split wall panels are connected to form a horizontal partition beam, which creates a significant visual difference. |
|---|---|---|

| Patent Figure 1 | Accused Products | Distinguishing features |
|---|---|---|
|  | | The wall panels in the patents and Accused Products include support frames and grid panels. However, there are many differences in structure between the two, which are compared in detail below. |

| Patent Figure 4  Patent Figure 3 | | There are significant differences between the support frames of Plaintiff's Patent 425 and the Accused Products. The support frame in the patent involved in the case includes a pair of cross bars and triangular support plates fixed above the cross bars. Two wheels are fixed under each cross bar, and the center line of the triangular support plates is fixed to the two side edges of the grid plate.<br>The support frame of the product involved in the case has an inverted T-shaped structure and also has a pair of cross bars. Above the cross bars are longitudinal support bars that are fixed on both sides of the grid plate. |
|---|---|---|



| | | |
|---|---|---|
| Patent Figure 6 | | The triangular support sheet of the support frame of the patent involved in the case is relatively thin, and from the front view and the bottom view, the support frame at the bottom has no obvious protrusion. Therefore, when multiple wall panels are placed in parallel, the gap between the wall panels is small.<br>The longitudinal support rods of the support frame of the product involved in the case are relatively thick, and from the perspective of the main view, the bottom support frame obviously protrudes outward. When multiple wall panels are placed in parallel, the gaps between the wall panels are relatively large.<br>Moreover, in conjunction with FIG. 1 of Plaintiff's Patent 425 , there is no obvious connection structure between the triangular support sheet and the mesh plate in Plaintiff's Patent 425 , and it may be fixed by welding. The longitudinal support rod of the Accused Products is fastened to the side of the mesh plate by screws and nuts, so it is easy to disassemble and is conducive to the transportation of the product. |
| Patent Figure 2 | | |



| | | The grid panel of Plaintiff's Patent 425 is an integral structure, which includes a square frame, a grid located inside, and longitudinally extending reinforcing beams. |
|---|---|---|

The grid plate of the product involved in the case has a split structure, which includes two split grid plates, the two split grid plates are fixed by screws and nuts, and can therefore be disassembled for easy transportation.

Moreover, the longitudinal reinforcing beam in Plaintiff's Patent 425 plays the role of reinforcing support, and is part of the overall outer frame. However, in the Accused Products, the upper and lower split wall panels are connected together to form a horizontal partition beam, which has a significant visual difference.

In summary, compared with the product involved in the case, the wall panel in Plaintiff's Patent 425 has significant differences in the overall structure, grid panel structure, and support frame structure.

First, visually, there is an obvious longitudinal reinforcing beam in the middle of the grid plate of Plaintiff's Patent 425, while a transverse partition beam is formed in the grid plate of the Accused Products. The bottom support frame of Plaintiff's Patent 425 is a triangular sheet

structure when viewed from the side, while the bottom support frame of the Accused Products is a triangular hollow structure when viewed from the side. In addition, due to the different thicknesses of the support frames, if multiple wall panels are arranged side by side, the gaps between the wall panels in Plaintiff's Patent 425 are smaller, while the gaps between the wall panels in the Accused Products are larger. Therefore, the two have obvious differences in appearance and structure and will not cause consumers to be mistaken.

Secondly, during transportation, the wall panels of the patent involved in the case cannot be disassembled as a whole; while the grid panels and support frames in the product involved in the case can be disassembled, and the grid panels can also be disassembled into two separate grid panels, which makes it more convenient for manufacturers and consumers to transport. Therefore, there is a clear difference in structure between the two, which makes the consumer experience completely different and will not cause consumers to misunderstand.

Therefore, due to the above-mentioned differences in appearance and structure, this product is completely different from Plaintiff's Patent 425 and does not infringe Plaintiff's Patent 425.

### B. PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM

A preliminary injunction is "an extraordinary remedy never awarded as of right." See *Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24* (2008). A plaintiff seeking a preliminary injunction must show that he will suffer irreparable harm, that traditional legal remedies would be inadequate, and that he has some likelihood of prevailing on the merits of his claims. See *Mays v. Dart, 974 F.3d 810, 818* (7th Cir. 2020) (quoting Speech First, Inc. v. Killeen, 968 F.3d 628, 637 (7th Cir. 2020)).

In this case, Plaintiff only shows Defendants selling the same kind of products as that of Plaintiff, which is not enough to state the existence or likelihood of irreparable harm that may be brought to Plaintiff by Defendants without showing a robust foundation of existence of an infringement. As the evidence and declarations show, the risk or threat of irreparable harm to Plaintiff is practically none because Defendants do not sell counterfeit products. Defendants' business is not built upon sales of infringing products.  Furthermore, from the comparison of the Defendants' products and the Plaintiff's patent we have made, which shows the technology design of Defendants' products is not from that of Plaintiff's patent, the grounds for Plaintiff to suffer irreparable harm do not exist.

## C.     PLAINTIFF FAILS TO ESTABLISH ANY FACTS SUPPORTING A BLANKET FREEZE OF DEFENDANTS' ASSETS

A prejudgment asset restraint is an extraordinary measure that is appropriate when an equitable remedy of accounting would be jeopardized without a restraint; it is not a device to be employed simply to secure a pot of money for later recovery of damages. See *Jergenson v. Inhale Int'l, 22 CV 2040, at *12* (N.D. Ill. Jan. 12, 2023) (citing Grupo Mexicano, supra, at 330-33).   This has clearly demonstrated the aim of preliminary judgment is not for recovery of "later damages". While asset freezes may be common in real counterfeiting cases, an asset freeze is still an extreme remedy that has a very limited purpose.  A district court is not permitted to freeze a Defendants' assets solely to preserve a Plaintiff's right to recover damages. See *Grupo Mexicano de Desarrollo, S.A. v. Aliance Bond Fund, Inc., 527 U.S. 308, 325* (1999).

In this case, Plaintiff has not shown robust evidence supporting his success on merits and suffering of irreparable harm. Plaintiff fails to establish any facts that support a blanket freeze of

Defendants' assets. Plaintiff's generic allegations regarding purported shady foreign entities have no bearing on Defendants. This alone should be sufficient to vacate the asset freeze.

## CONCLUSION

Based on the reasons stated above, the grounds for granting a preliminary injunction do not exist, and the preliminary injunctive requested by Plaintiff should be denied.

Dated: March 26, 2025                                  Respectfully submitted,


                                                    */s/   Sydney Ni Xue*
                                                    Sydney Ni Xue, Esq.
                                                    Florida Bar No. 1026130
                                                  Kemet Law Group
                                                  1825 NW Corporate Blvd., Suite 110
                                                  Boca Raton, FL 33431
                                                  Tel: (561) 870-0605
                                                  Email: nixuesydney@gmail.com，
                                                           ni@kemetlawgroup.com

                                                *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Motion was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on March 26, 2025.

/s/ Sydney Ni Xue